BUTCHER, RESPONDENT, VS. DEATH & TEASDALE, APPELLANTS.

15 271.
35a 608,
15 271
46a 253
15 271
162 463

1. The answer of a defendant must contain, in respect to each allegation in the petition controverted, a specific denial thereof, or of any knowledge thereof sufficient to form a belief; otherwise, for the purposes of the action, it will be taken as true; (Practice in courts of justice, art. VI., sec. 7; ib. art. VII., sec. 12;) but it is now, as it always has been, the duty of the court to tell the jury what questions of fact are to be tried, and what facts stand admitted by the pleadings.

2. The act of 1849, regulating practice in courts of justice, allows amendments, even at the trial, in order to conform the petition to the proof, and avoid a non suit on account of a variance. Still, the law remains as before, that the cause of action, for which the plaintiff recovers, is to be the same which he charges against the defendant, and which must be stated either in the original, or in an amended petition.

## APPEAL from St. Louis Court of Common Pleas.

HART, for appellants,

Relies on the following:

I. The court of common pleas erred in excluding John W. Malone from testifying on behalf of defendants below, when offered as a witness in their behalf.

The court of common pleas erred in refusing to grant a new trial, for the following reasons:

1. There was no evidence to sustain the finding of the jury.

2. Refusal to give instructions asked for by the defendant below.

3. There is no proof that the hams belonged to or were purchased by any person, except by Butcher, as master of the steamboat General Gaines.

4. The court below erred in refusing the defendant's instructions, that "if the hams in question, were brought for the steamboat General Gaines, by Butcher, the master, they will find for the defendants."

5. There was no evidence in the case tending to show that the hams were bought of James H. Teasdale, or that Teasdale had any interest, whatever, in the same.

6. Because, upon the law, as laid down by the court below, there was no evidencs, whatever, to justify the finding of the jury as to both defendants.

HUDSON, for respondant,

Relies on the following, to sustain the judgment of the court below:

1. That by the answer of the defendants, it is admitted that the hams in question, were the same that the defendants sold to plaintiff.

2. The deposition of George F. Davis, established the condition of the hams, the value thereof and the extent of the damages sustained by the plaintiff.

3. There is nothing in the record to show, that the court committed error in excluding Malone as a witness. It does not appear that his testimony was material. No offer was made to prove any fact by said witness, and this court cannot, from any thing on the record, determine whether the testimony of said Malone would have been of any importance in said cause.

4. Malone being one of the firm of Death & Co., was directly interested in the result of the suit; it was defended for his benefit, and under the law he was not competent.

Butcher vs. Death & Teasdale.

GAMBLE, J., delivered the opinion of the court.

The plaintiff, Butcher, sued Death and Teasdale, alleging in his petition, that they had sold him a quantity of hams, representing them to be sound, and of the best quality, and that he paid the bill for the hams, at the stipulated price; that the hams were shipped to Cincinnati, and upon being opened and examined, were found deficient in quantity about 1800 pounds, and were unsound and spoiled: that being obliged to sell them at a sacrifice, he had lost, by the defficiency in quantity and by the bad quality of the article, $187. The defendants answered separately. Death stated that he was a partner of the firm of James F. Death & Co., and that the firm sold to the plaintiff the hams in question; that the firm did not warrant the quality of the hams, but that they were selected from a large quantity belonging to the firm, by the defendant, Jas. H. Teasdale, who was not a member of the firm, nor interested in the hams, nor in the sale of them made to the plaintiff; but was a person employed by the plaintiff himself, to select for him the hams which Teasdale should judge to be of a good quality. The answer states, that the hams, after being selected by Teasdale, were weighed by the city weigher, and amounted to the quantity with which the plaintiff was charged, and for which he paid. The defendant, Teasdale, in his answer, denied that he had any interest in the hams sold to the plaintiff, and stated, that he was employed by the plaintiff, to examine some hams that the plaintiff was about to purchase from Jas. F. Death & Co., and to select such as were good, and that he did, at the request of the plaintiff, make the selection, and had no further concern in the transaction.

At the trial, it appeared, that at Cincinnati the hams were opened, and that some of them were injured and spoiled. The deficiency in quantity is supposed to be proved by the difference between the quantity sold there and the quantity charged to plaintiff here. It conclusively appeared, that the defendant, Teasdale, was not a partner of Death & Co., and that he was not interested in the sale between that firm and the plaintiff, and that he had no other part in the transaction than in selecting the hams at the request of the plaintiff.

After the evidence closed, the court instructed the jury:

1. That all the allegations in the plaintiff's petition, which are not specifically denied, are to be taken as true, unless they have expressly denied in their answer, that they have no knowledge nor information sufficient to form a belief.

2. If the jury believe from the evidence, that the plaintiff bought of Death or Death & Co., the hams in question, and that said hams were

Butcher vs. Death & Teasdale.

bought on the representations of said Death or Death & Co , said hams to be of a stipulated quantity and quality, and said hams were of inferior quality or deficient in quantity, they will find for the plaintiff as against the defendant Death.

3. If the jury believe from the evidence that the plaintiff bought the hams, relying upon the inspection of Teasdale, and that said Teasdale did not fairly inspect said hams, and that said hams were unsound or of inferior quality to those contracted for, the jury will find for the plaintiff as against said Teasdale, one of the defendants, for the damages sustained by the plaintiff in consequence of the inferior quality of the hams.

4. That if the jury believe from the evidence, that the plaintiff agreed to purchase said hams on the judgment of Teasdale, and that Teasdale did not inspect the said hams, but failed to do so, and that said hams at the said time were unsound, then they ought to find for the plaintiff.

5. The jury, if they believe that the evidence so requires, may find for one defendant and against the other.

6. If the jury find for the plaintiff, the measure of damages is the difference between the amount paid, and the price which should have been paid for the hams delivered, estimating the hams delivered, at their real value, both as to quantity and quality.

The court, at the request of the defendants, gave these instructions:

7. If the jury believe from the evidence, that the hams in question, were bought of Death or Death & Co,, not relying on the representations of Death or Death & Co., but on the inspection of Teasdale, and that Teasdale did inspect the hams, then they will find for the defendant Death, as far as the quality of the hams is concerned.

8. If the jury believe from the evidence, that the hams, in question, were bought of Death or Death & Co., said hams to be taken on the inspection of Teasdale, and that Teasdale did inspect them honestly and fairly and properly, then the jury will find for the defendant Teasdale.

9. The defendant Teasdale is liable only for any damage the plaintiff may have sustained in consequence of any unfair and improper inspection, which the jury may find from the evidence, that said Teasdale made.

10. If the hams were bought, relying not on the representations of Death, but on the inspection of Teasdale, and said Teasdale did inspect the hams, then Death is liable only for the deficiency in quantity, should the jury believe from the evidence that there was a deficiency.

11. If the jury believe from the evidence, that the hams were bought, not on the representations of Death, but on the inspection of Teasdale

18

and that the hams were so inspected, properly and fairly, then the jury will find for the defendants.

12. If the jury shall believe from the evidence, that the hams were purchased on the sole judgment of James H. Teasdale, and that said Teasdale practiced deceit in his selection, but that said Death had no knowledge or cognizance of said deceit, they will find for the defendant, Death.

13. There is no evidence in this case, to hold the defendant Teasdale liable for any deficiency in the quantity of the hams sold."

The first instruction given by the court, in substance, directs the jury to examine the pleadings of the parties, and determine what allegations of the petition are not specifically denied by the answers, and then to take such allegations as true, unless they find in the answers that the defendants have denied that they have sufficient information to form a belief upon the truth of the allegations.

The 12 section of the 7 article of the act regulating practice, declares, that any material allegation in the plaintiff's petition, not specifically denied in the answer, need not be proved, &c. The effect of this section is to declare what is in issue between the parties, and what allegations are to be taken as confessed. Now although the act is designed to make great and beneficial changes in the modes of proceeding in courts of justice, it is not thought to be a part of the proposed reform that the jury shall determine what issues they are to try, or whether the answer of the defendant, to any allegation in the petition, is sufficiently specific to put the plaintiff upon the proof of his charge. It is now, as it always has been, the duty of the court to tell the jury what questions of fact are to be tried, and what facts stand admitted by the pleadings.

The third instruction given to the jury, must have been given in mere forgetfulness of the charges in the petition. The petition alleges, that Teasdale, jointly with Death, sold the hams to Butcher, and they were different in quantity and of unsound quality. This third instruction tells the jury, that although Teasdale may have had no interest in the sale, yet, if the jury find that Butcher purchased the hams, relying upon the inspection of Teasdale, and that Teasdale did not fairly inspect them, and that they were unsound, or of inferior quality to those contracted for, then the jury should find for the plaintiff against Teasdale, for the damages sustained in consequence of the inferior quality of the hams. A verdict for the plaintiff, on this petition, is a finding that Teasdale sold the hams to Butcher; but in this instruction, the jury are required to find for the plaintiff, not upon a sale, but upon an unfair in-

spection made by Teasdale, of another man's property, sold by such third person to the plaintiff, The act of 1849, regulating practice, allows amendments, even at the trial, in order to conform the petition to the proof, and avoid a nonsuit on account of a variance. Still, the law remains as before, that the cause of action, for which the plaintiff recovers, is to be the same cause of action which he charges against the defendant, and which must be stated, either in the original or in an amended petition. The instruction, that upon this petition a verdict could be rendered against Teasdale, for unfairly inspecting the hams sold by Death, could only have been given through inadvertence, in the hurry of a jury trial.

If the plaintiff had amended his petition, so as to charge Teasdale with a failure to perform his engagement to inspect the hams of Death, and had claimed damages from him on that account, while he claimed damages from Death as the seller, on account of a deficiency in weight, and on account of the bad quality of the hams, he would probably have encountered some difficulty in showing that these two causes of action, on different contracts, made by different defendants, could be joined in the same petition.

The judgment, with the concurrence of the other judges, will be reversed, and the cause remanded to the court of common pleas for further proceedings.